Albert FELDMAN, Petitioner,

v.

BOARD OF PHARMACY OF DISTRICT OF COLUMBIA, Respondent.

No. 2404.

Municipal Court of Appeals for the District of Columbia.

Argued Feb. 19, 1960.

Decided April 19, 1960.

Harry Friedman, Washington, D. C., for petitioner.

1. Levene v. Oliver, D.C.Mun.App., 158 A.2d 324; Courembis v. Morfessis, D.C.Mun.App., 142 A.2d 517.

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel and Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

CAYTON, Acting Judge.

Before us for review is a decision of the District of Columbia Board of Pharmacy denying an application for renewal of a pharmacist's license. Because of the ground of our decision there is no need to recite the details of the involved nine-year history of the case. It was charged that in filling five prescriptions Feldman had early in 1951 wilfully substituted inexpensive and plentiful ascorbic acid pills for scarce and expensive cortisone.

Following certain court proceedings and summary attempts by the Board of Pharmacy to revoke Feldman's license, the matter came before the Board on his application, made in November 1954, for a three-year renewal of his license. The application being denied, Feldman demanded a hearing under Code 1951, § 2–606. In June 1955 the Board held a six-day hearing at which many witnesses, including Feldman, were heard, voluminous exhibits received, and arguments of counsel presented.

It was almost four years later, in April 1959, that the Board (then consisting of four new members and one continuing member) announced its decision to deny a renewal of the license.[1] That decision is here for review.

The Corporation Counsel argues in behalf of the Board that the appeal should be dismissed as moot because Feldman did not apply for a renewal of his license for the three-year period beginning November 1, 1957 (at which time the Board had the pending charges under advisement). This argument seems strange in view of a written opinion rendered by the Corporation Counsel in connection with this case in July 1957 to the effect that the license could not be revoked until after the Board had made adverse findings, based on the hearing it had conducted. Nor should the Board be heard to say otherwise, in the face of the formal statement by its Chairman, at the close of the hearings, that, "Although the Board has not renewed Mr. Feldman's license as of the first of December 1954, Mr. Feldman has been, by agreement, permitted to conduct his pharmacy as if he were licensed * * *," and plainly indicating that his status would not be altered while the Board had the case under advisement. This arrangement was again recognized by the Corporation Counsel in an official memorandum two years later, stating that Feldman had been "assured that he would not be hindered in the practice of pharmacy prior to final action by the Board. * * *" Such a solemn and official undertaking may not be repudiated in an attempt to shut off an appeal.

Hendelberg v. Goldstein, 93 U.S.App.D. C. 395, 211 F.2d 428, does not require a different result. Indeed we think it takes cognizance of situations like this, where at renewal time a licensee's case is pending before the Board. See also Norton v. Leisering, D.C.Mun.App., 125 A.2d 56. This appeal is not moot.

Many grounds for reversal are urged by petitioner. We reach only one: the claim that he was denied due process because his case was decided by four Board members who were not present at the hearing and hence were not qualified to sit in judgment.

---

1. About two months after conclusion of the hearing the Board drafted findings and submitted them to the Corporation Counsel's office for review "as to legal sufficiency and phraseology." It is difficult to tell from the record what caused the long delay which followed.

The hearing prescribed by Congress gives the petitioner the right to be represented by counsel, introduce evidence, and examine and cross-examine witnesses. Code 1951, § 2–606. Though this was an administrative proceeding and was not surrounded by the same formality as a court trial, it must not lack rudimentary requirements of fair play. Ritch v. Director of Vehicles and Traffic of Dist. of Columbia, D.C.Mun.App., 124 A.2d 301. The manifest purpose of providing such a hearing is to comply with the requirements of due process upon which the parties affected "are entitled to insist." Shields v. Utah Idaho Cent. R. Co., 305 U.S. 177, 182, 59 S.Ct. 160, 163, 83 L.Ed. 111, 116. It has long been recognized that such hearings are to be held in the tradition of judicial proceedings in which evidence is received and weighed by the trier of facts.

Is that requirement satisfied when almost four years after hearing, and after several changes in Board personnel, a decision is rendered by only one member who heard the case and four others who did not? The Corporation Counsel has cited us to no case and has presented no argument on the question; he says only that the procedure was not prejudicial and that the four new members reviewed and examined the transcript of testimony and exhibits before reaching their decision.

The Supreme Court has said, "The one who decides must hear." Morgan v. United States, 298 U.S. 468, 481, 56 S.Ct. 906, 912, 80 L.Ed. 1288, 1295. It has been recognized that though this rule need not always be followed literally, it does require that an official who makes ultimate determinations must consider and appraise the evidence which purportedly supports them. The only significant exceptions seem to be in situations where the hearing officer (such as master or trial examiner) submits a report to a superior board or agency for its decision, or where the facts are stipulated and result in issues of law. See Kuhn v. C. A. B., 87 U.S.App.D.C. 130, 183 F.2d 839; Eastland Co. v. F. C. C., 67 App. D.C. 316, 92 F.2d 467.

Years ago a case like ours was before the Court of Appeals of New York. Smith v. State, 214 N.Y. 140, 108 N.E. 214, 215. In a proceeding before the state Board of Claims evidence was heard by three commissioners. After the case was submitted for decision one commissioner resigned and a new man was appointed in his place. The new man had not heard the witnesses but did participate in the decision. Said the court, per Cardozo, J., "[The new commissioner] had no authority to decide the case at all. He did not become a member of the Board until the evidence had been heard and the case submitted. We think he was not at liberty to take any part in the decision." The opinion continued, "The Board is not in the strict sense a court * * * ; but its functions are judicial, and the requirement that witnesses shall be seen and heard by the judicial officer who is to weigh their testimony has been proved by experience to be a means so important for the ascertainment of truth as to entitle us to assume that it will not be lightly abandoned. * * * The conclusion, therefore, is that those commissioners who heard the witnesses, and those only, should have joined in the decision." (We may interpose here that the mischief in this case is greater, because four of the five deciding members were under the disqualification of not having heard the evidence, and hence there was no quorum qualified to act. See Kaiser v. Real Estate Comm., D.C.Mun. App., 155 A.2d 715.)

Other courts have announced the same general rule as that stated in the Smith case, supra. Holt v. Raleigh City Board of Education, D.C.E.D.N.C., 164 F.Supp. 853, affirmed 4 Cir., 265 F.2d 95; United States ex rel. Chin Cheung Nai v. Corsi, D.C.S.D.N.Y., 55 F.2d 360; Fox v. Fox, 127 Cal.App.2d 253, 273 P.2d 585; Ross v. Murphy, 113 Cal.App.2d 453, 248 P.2d 122; Lacey v. Bertone, 109 Cal.App.2d 107, 240 P.2d 395; Reimer v. Firpo, 94 Cal.App.2d 798,

212 P.2d 23; Dawson v. Wright, 234 Ind. 626, 129 N.E.2d 796; State ex rel. Harp v. Vanderburgh Circuit Court, 227 Ind. 353, 85 N.E.2d 254, 11 A.L.R.2d 1108; Perkins v. School Committee, 315 Mass. 47, 51 N.E.2d 978; Hawkins v. Common Council of City of Grand Rapids, 192 Mich. 276, 158 N.W. 953; McAlpine v. Garfield Water Comm., 135 N.J.L. 497, 52 A.2d 759, 171 A.L.R. 172; Katz v. McCosh, 19 Misc.2d 627, 192 N.Y.S.2d 390; In re Marshall, 363 Pa. 326, 69 A.2d 619; cf. Connelly v. United States, 8 Cir., 249 F.2d 576; Farrell v. Mayor of City of Revere, 306 Mass. 221, 27 N.E.2d 724; Joyce v. Bruckman, 257 App.Div. 795, 15 N.Y.S.2d 679.

In this jurisdiction a similar rule was recently announced. Where oral argument had been requested and not clearly waived, it was held that a Federal Communications Commissioner should not have voted without having heard the oral argument. WIBC, Inc. v. F. C. C., 104 U.S.App.D.C. 126, 259 F.2d 941.

■ It has also been held, with seeming consistency, that in these situations the error is not cured by having the factfinder later read the transcript. David v. Goodman, 114 Cal.App.2d 571, 250 P.2d 704; McAllen v. Souza, 24 Cal.App.2d 247, 74 P.2d 853; Perkins v. School Committee, supra; Hawkins v. Common Council of City of Grand Rapids, supra; Cram v. Bach, 1 Wis.2d 378, 83 N.W.2d 877, 85 N.W.2d 673. See also Reilly v. Pinkus, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63.

Appellate courts usually lean heavily on findings of administrative boards, as they do on judges' findings and jury verdicts. This is in recognition of the intelligence and understanding of the triers of fact; it is also, as has been said times without number, in recognition of their opportunity to personally hear the witnesses and observe their demeanor in the act of testifying. When that opportunity is lacking and weight and credibility of evidence are involved, there is also lacking an essential ingredient of due process.

■ In this case the issues were complicated and highly controversial. The hearings were long and sometimes heated. Petitioner's denials of wrongdoing were emphatic. There were important areas where credibility of witnesses was a vital factor. The decision to refuse renewal of petitioner's license was based on an ultimate finding that "he is a person of an immoral character." The circumstances required that the Board exercise a judgment judicial in nature in weighing and appreciating the credibility and persuasiveness of the testimony. This could not validly be done on a cold record, four years after the hearing and eight years after the alleged offense.

The decision must be reversed for proceedings not inconsistent with this opinion.

Reversed.