GALLOTHOM, INC., Petitioner,

v.

DISTRICT OF COLUMBIA ALCO-
HOLIC BEVERAGE CONTROL
BOARD, Respondent.

Ruth Goodwin, Intervenor.

No. 00–AA–373.

District of Columbia Court of Appeals.

Argued April 10, 2001.
Decided March 20, 2003.

Anson M. Keller, with whom Michael S. Levy, Washington, DC, was on the brief, for petitioner.

Steven A. Skalet, Washington, DC, for intervenor.

Carl J. Schifferle, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before WAGNER, Chief Judge, and SCHWELB and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

On March 8, 2000, the Alcoholic Beverage Control Board (Board) issued a final order denying petitioner, Gallothom, Inc. (Gallothom), a renewal of a liquor license for the Isle Restaurant. On appeal, petitioner alleges that: 1) the doctrines of res judicata and collateral estoppel bar the Board from not renewing its liquor license; 2) the Board violated Gallothom's due process rights by issuing a final decision after a hearing where none of the members of the Board who signed the decision was present; and 3) a new hearing should be ordered because the Board did not issue the final decision within 120 days. We disagree with the petitioner and affirm the agency's ruling.

## I.

The Isle Restaurant (Isle), owned by Gallothom, has held a class "C" liquor license since 1971. In January 1989, Gallothom applied for and received a class "CN" license from the Board for Isle because the restaurant allowed nude dancing. In December 1998, Gallothom filed an application to renew its liquor license, after which Advisory Neighborhood Commission (ANC) Representative Ruth Young Goodwin and ANC Chairperson Joseph Bowser filed a timely protest pursuant to D.C.Code § 25–315(a) (2001). The protest alleged that Isle adversely affected the peace, order and quiet of the neighborhood, residential parking, vehicular and pedestrian safety, and real property values in the neighborhood. Protest hearings were held on March 17, 1999 and May 19, 1999. On October 6, 1999, the Board issued a proposed order, as opposed to a final order, pursuant to D.C.Code § 2–509 (2001) denying renewal of the license. Gallothom filed an exception to the Board's proposed order to which the protestants filed a reply. A hearing on Gallothom's exceptions to the proposed order was held before the Board on January 19, 2000. The Board then issued a final order on March 8, 2000, concluding that Isle adversely affected the peace, order, and quiet of the neighborhood and denying Gallothom's request to renew its liquor license. Gallothom now seeks review of this decision.

## II.

### A. Res judicata

■■■ Gallothom argues that the doctrines of res judicata and collateral estoppel, absent new facts or circumstances, preclude the Board from not renewing its license because the license had been renewed in the past. "Res judicata bars a claim based on the same factual transaction and the same parties if an action was brought or could have been brought in a forum that has rendered a final decision on the merits." *Herbin v. Hoeffel,* 806 A.2d 186, 193 · (D.C.2002) (citation omitted). "[C]ollateral estoppel, or issue preclusion, renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was

essential to the judgment, and not merely dictum." *Davis v. Davis*, 663 A.2d 499, 501 (D.C.1995) (citation omitted).

 This court has held that the doctrines of res judicata and collateral estoppel apply in administrative cases only "when the agency is acting in a judicial capacity, resolving disputed issues of fact properly before it which the parties have an adequate opportunity to litigate." *Oubre v. District of Columbia*, 630 A.2d 699, 703 (D.C.1993) (citing *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1194 (D.C. 1980)). Thus, "[t]he threshold inquiry is whether the earlier proceeding, is the essential equivalent of a judicial proceeding." *Id.* at 703. However, the application of res judicata in administrative decisions "is not encrusted with the rigid finality that characterizes the precept in judicial proceedings," *id.* at 703–04 (quoting *Grose v. Cohen*, 406 F.2d 823, 825 (4th Cir.1969)) and there may be practical reasons to refuse to apply the doctrines. *Id.* Furthermore, "an administrative agency decision, issued pursuant to a statute, cannot have preclusive effect when [the legislature], either expressly or impliedly, indicate[s] that it intended otherwise." *Texas Inst. Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed.Cir.1996), *cert. denied*, 520 U.S. 1228, 117 S.Ct. 1818, 137 L.Ed.2d 1027 (1997) (citing *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991)).

Gallothom contends that since past Boards have concluded that Isle was appropriate for the neighborhood and that there was not a problem with littering, loitering, public urination, parking, or criminal activity, these prior decisions prevent the Board from reviewing the same factors in ruling on its renewal application. We disagree. This claim is not precluded under a theory of either res judicata or collateral estoppel because the legislature clearly intended that each renewal of a liquor license is a new factual transaction, separate and distinct from both the original transaction of acquiring the license and prior renewals of the license.

The Board has the statutory authority to issue a liquor license for a two-year period, after which the license can be renewed. D.C.Code § 25–104(b) (2001). Before renewing the license, however, the statute requires the Board to make new findings, separate and apart from any prior findings, that the establishment "is appropriate for the locality, section, or portion of the District where it is to be located." D.C.Code § 25–313(a) (2001). The statute on its face explicitly provides for a new finding and it is clear that prior adjudications are subject to modification and reexamination. To conclude otherwise would lead to an absurd result because the factors impacting the renewal of a license are based on events subsequent to an establishment's last hearing. Furthermore, our conclusion comports with the clear legislative intent of the statute. By providing for renewal of the license and a protest hearing every two years, the legislature intended to give the public the opportunity to challenge the renewal of an alcohol license. *See Report of the D.C. Council Comm. on Consumer and Reg. Affairs on Bill 6–504, District of Columbia Alcoholic Beverage Control Act Reform Amendment Act of 1986* (Nov. 12, 1986), at 2.

**B. Due Process**

Gallothom asserts that its due process rights were violated because: 1) a proposed decision was issued even though all the members of the Board were not present during the evidentiary hearings; and, 2) a final decision was issued even though the members of the Board viewed different evidentiary hearings. Gallothom contends that since the members of the Board were

not present at the same hearing, they were unable to make credibility determinations, which Gallothom believes were essential to the Board's denial of its license.

■■■■ The due process clause provides that "no person shall be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "The procedural due process guarantee imposes procedural requirements on the government before it deprives individuals of protected interests." *Richard Milburn Pub. Charter Alternative High Sch. v. Cafritz,* 798 A.2d 531, 541 (D.C.2002) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). "When protected interests are implicated, the Constitution requires notice and opportunity for hearing appropriate to the nature of the case." *Id.* (citation and internal quotation marks omitted). Gallothom relies heavily on *Feldman v. Board of Pharmacy of the District of Columbia,* 160 A.2d 100, 101 (Mun.Ct.D.C.1960), to argue that the Board's decision must be remanded. In *Feldman,* a decision by the Board of Pharmacy was reversed because the petitioner's case was decided by four members of the board who were not present at the hearing. *Id.* at 101,103. Since *Feldman,* however, the D.C. Council enacted the District of Columbia Administrative Procedure Act (DCAPA). This act clearly provides procedural safeguards to protect an individual's or, as in this case, an establishment's due process rights. The Act states in part:

> Whenever in a contested case a majority of those who are to render the final order or decision did not personally hear the evidence, no order or decision adverse to a party to the case (other than the Mayor or an agency) shall be made until a proposed order or decision, including findings of fact and conclusions of law, has been served upon the parties and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to a majority of those who are to render the order or decision, who, in such case, shall personally consider such portions of the exclusive record, as provided in subsection (c) of this section, as may be designated by any party.

D.C.Code § 2–509(d) (2001). In this case, a panel, including two of the Board members who were present at the protest hearing, issued a proposed decision and order listing its findings of facts and conclusions of law. Gallothom filed an exception to the proposed order, in accordance with D.C.Code § 2–509(d), and it was afforded a hearing before the final order was issued. The final order was then issued based on the extensive findings of fact produced in the proposed decision. After reviewing the facts, it is clear that the procedure set forth in D.C.Code § 2–509(d) was followed and Gallothom was not deprived of due process of law.[1]

### C. New Hearing

■■■■ Gallothom's final argument is that the Board's decision should be reversed because of the Board's failure to issue its final decision in a timely manner. The Board has 120 days after the close of the

---

**1.** Gallothom also alleges that § 2–509(d) is unconstitutional because it permits the Board to make determinations without assessing the credibility of witnesses. We do not need to decide this issue. The determination of witnesses' credibility was not a central issue in this case because none of the testimony was in direct conflict. Here, the testimony received from a number of neighborhood residents and the ABC Investigator clearly supported the Board's conclusions. While the testimony of the Isle owner and manager was not the same as the testimony of the residents, neither witness could plainly challenge the personal observations made by the residents nor the ABC Investigator.

record [2] to issue its written decision accompanied by findings of fact and conclusions of law. *See* D.C.Code § 25–106(c)(6) (1996).[3] In this case, the record was closed on June 8, 1999 and the proposed decision was issued on October 6, 1999—120 days following the closing of the record. The final decision was issued on March 8, 2000. Gallothom contends that since the final decision was not issued within the 120 days, the Board's decision must be reversed. After reviewing the relevant statutes, we disagree.

 In this case, D.C.Code § 25–106(c)(6) has a 120–day limitation for the issuance of a written order. "Statutory provisions concerning the performance of duties by public officers generally are considered directory so that the interests of private parties and the public might not suffer due to the official's failure to act promptly." *Vann v. District of Columbia Bd. of Funeral Directors & Embalmers*, 441 A.2d 246, 248 (D.C.1982) (citing *JBG Properties, Inc. v. District of Columbia Office of Human Rights*, 364 A.2d 1183 (D.C.1976)) (further citations omitted). When determining whether the 120–day time requirement is mandatory or directory, we must balance "whether any prejudice to a party caused by agency delay is outweighed by the interests of another party or the public in allowing the agency to act after the statutory time period has elapsed." [4] *Id.* We can think of no reason, nor has the petitioner clearly articulated a reason, why it is prejudiced by the delay. Based on the lack of prejudice to the peti-

tioner and the public interest in ensuring the safety of the neighborhood, we must conclude that the 120–day time limit is directory, thus the Board's decision is valid.

Accordingly, the judgment on appeal is *Affirmed.*

---

**2.** A record is considered closed twenty days after a hearing is concluded or after receipt of Proposed Findings of Fact and Conclusions of Law from all parties. D.C.Code § 25–106(c)(6) (1996).

**3.** This code provision has since been amended and recodified to provide for a 90–day time limit. *See* D.C.Code § 25–433(c) (2001).

**4.** The agency must bear the burden of demonstrating that the delay did not substantially prejudice the complaining party. *Vann, supra,* 441 A.2d at 248.