Mimia **JEFFERS** and Allene Jeffers, Minors, by John L. Jeffers, their Father and Next Friend, et als., Plaintiffs,

v.

Thomas H. **WHITLEY**, Superintendent of the Public Schools of Caswell County, et als., Defendants.

Civ. No. 1079-G.

United States District Court
M. D. North Carolina,
Greensboro Division.

Aug. 4, 1961.

C. O. Pearson and William A. Marsh, Jr., Durham, N. C., and Jack Greenberg, New York City, for plaintiffs.

Robert R. Blackwell, Yanceyville, N. C., for defendants.

EDWIN M. STANLEY, Chief Judge.

This action was commenced on December 10, 1956, by twenty-three adult plaintiffs, individually and as parents and next friends of forty-three minor plaintiffs, on behalf of themselves and all other citizens and residents of Caswell County, North Carolina, similarly

situated. All plaintiffs are members of the Negro race. Named defendants were the Superintendent of the Public Schools of Caswell County, the individual members of the Caswell County School Board, the State Superintendent of Public Instruction, and the individual members of the State Board of Education. In an opinion filed September 12, 1958, it was ruled that the motion of the plaintiffs for leave to file supplemental complaint, alleging that they had exhausted all administrative remedies under the North Carolina laws relating to the enrollment and assignment of pupils without obtaining the relief sought, should be granted, and that the action should be dismissed as to the State Superintendent of Public Instruction and the individual members of the State Board of Education. Jeffers v. Whitley, D.C. M.D.N.C.1958, 165 F.Supp. 951. The earlier history of this litigation, including the allegations in the proposed supplemental complaint, may be found in that opinion.

In its answer to the supplemental complaint, the defendant Board alleged that on July 16, 1957, following the assignment of pupils to the Caswell County public schools for the 1957–1958 school year, the plaintiffs in apt time applied for reassignment to other schools; that the defendant Board denied each request for reassignment; that the plaintiffs thereafter timely filed requests for a hearing pursuant to the provisions of the state statutes relating to the enrollment and assignment of pupils; that the plaintiffs were duly notified that the requested hearings would be held on February 3, 1957; and that the defendant Board met on said date for the purpose of conducting said hearings, but that due to the fact that neither of the plaintiffs, nor anyone representing them, appeared at said hearings, same were not held.

Following the submission of interrogatories to the defendants, and the filing of certain stipulations, the plaintiffs, on October 19, 1959, moved the court for a stay of the proceedings for the purpose of allowing them an opportunity to exhaust their administrative remedies in the manner prescribed in McKissick v. Durham City Board of Education, D.C.M.D.N.C.1959, 176 F.Supp. 3. As a reason for said motion, the plaintiffs alleged that at the time they pursued their administrative remedies before the defendant Board the court had not decided the McKissick case and the case of Holt v. Raleigh City Board of Education, D.C.E.D.N.C.1958, 164 F. Supp. 853, affirmed 4 Cir., 1959, 265 F.2d 95 certiorari denied 1959, 361 U.S. 818, 80 S.Ct. 59, 4 L.Ed.2d 63, holding that it was necessary for applicants for reassignment to personally appear at hearings conducted by School Boards.

Prior to a ruling on plaintiffs' motion to stay proceedings, the parties, on October 27, 1959, stipulated that counsel for the plaintiffs would submit to the defendant Board, not later than March 1, 1960, the names and addresses of all the original plaintiffs who were still attending the public schools of Caswell County and who still desired reassignment to another school; that such plaintiffs would be notified at the end of the 1959–1960 school year as to the schools to which they had been assigned for the 1960–1961 school year; that such of said plaintiffs still desiring reassignment to another school would timely file an application for reassignment with the defendant Board; that the defendant Board would meet within ten days thereafter and consider any such requests for reassignment; and that if any requests for reassignment were denied and a hearing was desired, such hearing would be held within ten days.

An order was entered on July 22, 1960, granting the motion of the plaintiffs for leave to file a second supplemental complaint alleging that nine of the original minor plaintiffs had been assigned to all Negro schools for the 1960–1961 school year, and that after the exhaustion of their administrative remedies their applications for reassignment had been denied.

The case was tried by the court without a jury on November 3, 1960. At the

conclusion of the trial, the court gave the parties a specified time within which to file proposed findings of fact, conclusions of law, and briefs, after which oral arguments would be heard.

The requests for findings of fact, conclusions of law, and briefs of the parties having been received, the court, after considering the pleadings and evidence, including exhibits, answers to interrogatories and stipulations filed, and briefs and oral arguments of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

### Findings of Fact

1. At all times pertinent, the minor plaintiffs still interested in this litigation were citizens and residents of Caswell County, North Carolina, and each possessed all necessary qualifications for admission to the public schools of Caswell County.

2. The defendant Board maintains and generally supervises the operation of the public schools of Caswell County, and in the operation of said schools possesses such powers as are conferred by Chapter 115 of the General Statutes of North Carolina.

3. The defendant Board operates and maintains five elementary schools and one consolidated elementary and high school attended exclusively by Negro students, and five elementary schools and four consolidated elementary and high schools attended exclusively by white students.

4. Approximately six thousand pupils are enrolled in the Caswell County public schools, about fifty-three per cent of whom are Negroes and forty-seven per cent of whom are whites.

5. Some of the plaintiffs have made repeated efforts since 1955 to prevail upon the defendant Board to desegregate its public schools of Caswell County, but these efforts have been without success.

6. At the end of the 1959–1960 school year, sixteen of the original minor plaintiffs were still attending the public schools of Caswell County, and on May 31, 1960, all were assigned, by notification on their respective report cards, to all Negro schools for the 1960–1961 school year.

7. By stipulation of counsel for the plaintiffs and the defendants, it was agreed that the court in the final disposition of this case would only consider those minor plaintiffs who timely filed an application with the defendant Board for reassignment to another school for the 1960–1961 school year.

8. On June 9, 1960, applications for reassignment to schools previously attended solely by white students were timely filed on behalf of nine of the original forty-three minor plaintiffs, namely: Samuel Maloy Mitchell, Charlie Jeffers, Alexander Jeffers, Sylveen Jeffers, Nathan Brown, Lunsford Brown, Sheliah Brown, Charlie Saunders, Jr., Fred Saunders. Except for Charlie Saunders, Jr. and Fred Saunders, it was requested that each of said minor plaintiffs be transferred from the Caswell County Training School, a school attended solely by Negro students, to Bartlett Yancey School, a school attended solely by white students. With respect to Charlie Saunders, Jr. and Fred Saunders, request was made that they be transferred from New Dotmond Elementary School, a school attended solely by Negro students, to a "school nearest their home, based upon a non-segregated system without regard to race or color."

9. The defendant Board thereafter met and gave separate consideration to each of said applications. After considering the record of each applicant, "along with school bus routings, location of student's home, and information in the school records, and on the application form," all of said applications for reassignment were rejected, and the parents of said minor plaintiffs were duly notified of the action of the Board.

10. Requests for hearings before the defendant Board on the denial of said applications for reassignment were thereafter timely and properly filed on behalf of the said nine minor plaintiffs. The requests were granted and the par-

ents of said minor plaintiffs were duly notified of the date and place of the hearings.

11. On July 6, 1960, hearings were conducted with respect to the applications of Samuel Maloy Mitchell, Charlie Jeffers, Alexander Jeffers, Sylveen Jeffers, Nathan Brown, Lunsford Brown and Sheliah Brown. George Mitchell and wife, Ada Mitchell, adult plaintiffs and parents of Samuel Maloy Mitchell, and Jasper Brown and wife, Odessa Brown, adult plaintiffs and parents of Nathan Brown, Lunsford Brown and Sheliah Brown, were present at said hearings. Said plaintiffs were also represented by their counsel, C. O. Pearson, Esquire, who read a memorandum protesting the operation of a segregated school system in Caswell County.

12. Neither Charlie Jeffers, Alexander Jeffers, nor Sylveen Jeffers, minor plaintiffs, nor either of their parents, John M. Jeffers and wife, Annie L. Jeffers, were present at said hearings, although they had been properly notified of the place and hour of the hearing. The only explanation of their absence was that given by Jasper Brown, who stated he had gone to see John M. Jeffers "for the purpose of his attending this meeting and that Mr. Jeffers had stated that he was too busy to attend the meeting."

13. Following the hearings, the defendant Board again rejected the application for reassignment filed on behalf of each of said minor plaintiffs. The board minutes recite that this action was taken after making considerable study of the applications and requests for hearing, and after "further discussion of the talks" with those present.

14. On July 15, 1960, the defendant Board held hearings in connection with the applications for reassignment filed on behalf of Charlie Saunders, Jr. and Fred Saunders. Charlie H. Saunders, adult plaintiff and father of said minor plaintiffs, was present at the hearing. Said plaintiffs were also represented at the hearing by their counsel, William A.

Marsh, Jr., Esquire. Following the hearings, the application for reassignment filed on behalf of each of said minor plaintiffs was rejected. The board minutes recite that this action was taken after a further study of the information contained in the applications, and other available information.

15. Caswell County Training School, a high school attended solely by Negro students, and Bartlett Yancey School, a high school attended solely by white students, are both located in the town of Yanceyville, and are about one and one-half blocks apart. Caswell County Training School is the only school in Caswell County accredited by the Southern Association of Colleges and Secondary Schools.

16. Nathan Brown, Lunsford Brown and Sheliah Brown live about five and one-half miles from Yanceyville, and at the end of a dead-end country road. This country road is about two and one-half miles in length and all the school children residing on the road attend Caswell County Training School. A Caswell County Training School bus goes within four-tenths of a mile of the Brown home, but it is two and one-half miles from the Brown home to the nearest school bus serving the Bartlett Yancey School.

17. New Dotmond Elementary School, an elementary school in Caswell County attended solely by Negro students, is located about four and two-tenths miles from the home of Charlie Saunders, Jr. and Fred Saunders. Murphy Elementary School, an elementary school in Caswell County attended solely by white students, is located about two and four-tenths miles from the home of Charlie Saunders, Jr. and Fred Saunders. The Saunders children ride a school bus which comes by their home to New Dotmond Elementary School. Another school bus going to Murphy Elementary School also passes in front of their home.

18. All of the nine minor plaintiffs still involved in this litigation travel to and from school by school buses provid-

ed by the defendant Board, and this would still be true had their applications for reassignment been granted.

19. Samuel Maloy Mitchell was graduated from the Caswell County Training School in May 1961, and is no longer eligible to attend the public schools of Caswell County. Charlie Jeffers has previously quit school and is no longer enrolled in any of the Caswell County public schools.

20. The defendant Board has never put in writing any definite criteria or standards by which to judge applications for change of pupil assignment. However, it was testified that the board members considered all pertinent information, such as the pupil's individual record, accumulated folder, residence, the reason assigned as to why a transfer was desired, and any other information that the board could obtain, in determining whether to approve or deny a request for transfer. It was further testified that the same tests were applied to both Negro and white students seeking a transfer.

### Discussion

Although this litigation has been pending for almost five years, and many of the minor plaintiffs are no longer attending the public schools of Caswell County, it should be noted that in the original complaint the plaintiffs completely ignored the North Carolina Assignment and Enrollment of Pupils Act,[1] and failed to allege that they had exhausted, or had even attempted to exhaust, their administrative remedies under that act. The original complaint is couched in almost the identical language as the complaint in Covington v. Edwards, D.C.M.D.N.C. 1958, 165 F.Supp. 957, affirmed 4 Cir., 1959, 264 F.2d 780, certiorari denied 1959, 361 U.S. 840, 80 S.Ct. 78, 4 L.Ed.2d 79, where it was held the complaint should be dismissed for failure to state a claim upon which relief could be granted. On February 10, 1958, the plaintiffs, recognizing their responsibility to comply with the provisions of the state law relating to the enrollment and assignment of pupils in public schools, sought and obtained leave to file a supplemental complaint alleging that with respect to the 1957–1958 school year they had "exhausted all administrative remedies, as required by the pupil assignment law." Jeffers v. Whitley, D.C.M.D.N.C.1958, 165 F.Supp. 951, 954. It later developed that in attempting to exhaust their administrative remedies with respect to the 1957–1958 school year, none of the plaintiffs, either adult or minor, personally attended the board hearings which were held in connection with their reassignment applications. On October 19, 1959, the plaintiffs moved for a stay of the proceedings for the purpose of allowing them to exhaust their administrative remedies in the manner prescribed in Holt v. Raleigh City Board of Education, D.C.E.D.N.C.1958, 164 F.Supp. 853, affirmed 4 Cir., 1959, 265 F.2d 95, certiorari denied 1959, 361 U.S. 818, 80 S.Ct. 59, 4 L.Ed.2d 63, and McKissick v. Durham City Board of Education, D.C. M.D.N.C.1959, 176 F.Supp. 3. Pending a decision on this motion, it was agreed that the final disposition of this case would be limited to an adjudication of the rights of those minor plaintiffs who exhausted their administrative remedies with respect to the 1960–1961 school year.

We are now concerned with the constitutional rights of Samuel Maloy Mitchell, Charlie Jeffers, Alexander Jeffers, Sylveen Jeffers, Nathan Brown, Lunsford Brown, Sheliah Brown, Charlie Saunders, Jr. and Fred Saunders. Since Samuel Maloy Mitchell was graduated from the Caswell County Training School earlier this year, and is no longer eligible to attend the public schools of Caswell County, an adjudication of his rights is no longer necessary. With respect to Charlie Jeffers, Alexander Jeffers and Sylveen Jeffers, it cannot be seriously contended that they have exhausted their administrative remedies under the state

---

1. Section 115–176 through Section 115–179 General Statutes of North Carolina.

law relating to the enrollment and assignment of pupils. The plaintiffs recognized their responsibility to comply with these laws, and recognized that they would be delinquent if they failed to attend the board hearing in connection with their applications for reassignment, when they moved on October 19, 1959, for a stay of proceedings to allow them to exhaust their administrative remedies in the manner prescribed in the Holt and McKissick cases. These cases hold that students seeking reassignment are delinquent in failing to attend hearings before school boards, and that appearance by counsel is insufficient. The only logical conclusion to be drawn is that the parents of the Jeffers children no longer desired that their children be reassigned to another school. This is especially true since Jasper Brown, one of the other adult plaintiffs specifically requested John M. Jeffers to attend the board hearings and he declined to do so for the reason that he was "too busy" to attend the meeting. Additionally, Charlie Jeffers is no longer attending the public schools of Caswell County. This leaves for consideration the Brown children, namely, Nathan Brown, Lunsford Brown, and Sheliah Brown, and the Saunders children, namely, Charlie Saunders, Jr. and Fred Saunders.

■ These remaining plaintiffs have made an adjudication of their rights most difficult by reason of the fact that the action has been maintained throughout as a class action, and the lack of pertinent data furnished in their applications. In the original and two supplemental complaints, the plaintiffs pray that a three-judge court be convened pursuant to Title 28, Sections 2281 and 2284, United States Code, for the purpose of declaring unconstitutional and restraining the enforcement of certain provisions of the constitution and statutes of North Carolina which require or permit racial segregation in the public schools, and that the defendants be required to promptly present a plan of desegregation which will expeditiously desegregate the public schools of Caswell County. There

is no prayer that the individual rights of the plaintiffs be adjudicated, except as those rights are common to all other citizens of Caswell County similarly situated. While the Brown children applied for a transfer to the Bartlett Yancey School, they gave no relative distances between their home and this school and the school to which assigned, school bus routings, or any other pertinent information. The only reason they gave for requesting a transfer was to be in an integrated school system. The Saunders children did not designate any school to which transfer was desired, the relative distances of any of the schools from their home, availability of bus facilities, or other pertinent data, but simply stated they desired to transfer to a school "nearest their home, based upon a non-segregated system without regard to race or color." The plaintiffs do not now propose any findings or conclusions with respect to any particular school which the minor plaintiffs desire to attend, but rather propose that the court, by virtue of the action taken on the applications of these minor plaintiffs, and the fact that the defendant Board is still operating a segregated school system require defendants to promptly present a plan of desegregation which will expeditiously desegregate the schools of Caswell County.

■■ There has been a total failure on the part of the plaintiffs to demonstrate the necessity for convening a three-judge court. The defendants concede that any provisions of the constitution or statutes of North Carolina requiring the segregation of pupils in public schools are invalid, and deny that any applications for reassignment have been considered on the basis of race. To convene a three-judge court could only result in a restatement of legal principles that have been stated time and again. Covington v. Montgomery County School Board, D.C.M.D.N.C.1956, 139 F.Supp. 161; Jeffers v. Whitley, D.C.M.D.N.C. 1958, 165 F.Supp. 951; Constantian v. Anson County, 1956, 244 N.C. 221, 93 S. E.2d 163; McKissick v. Durham City Board of Education, D.C.M.D.N.C.1959,

176 F.Supp. 3. It has also been repeatedly held that injunctive relief in suits of this type will be granted only after the exhaustion of administrative remedies, and that rights must be asserted as *individuals,* not as a class or group. Carson v. Board of Education of McDowell County, 4 Cir., 1955, 227 F.2d 789; Carson v. Warlick, 4 Cir., 1956, 238 F.2d 724, certiorari denied 1957, 353 U.S. 910, 77 S.Ct. 665, 1 L.Ed.2d 664; Covington v. Edwards, D.C.M.D.N.C.1958, 165 F.Supp. 957, affirmed 4 Cir., 1959, 264 F.2d 780, certiorari denied 1959, 361 U.S. 840, 80 S.Ct. 78, 4 L.Ed.2d 79; Holt v. Raleigh City Board of Education, D.C.E.D.N.C. 1958, 164 F.Supp. 853, affirmed 4 Cir., 1959, 265 F.2d 95, certiorari denied 1959, 361 U.S. 818, 80 S.Ct. 59, 4 L. Ed.2d 63, and McKissick v. Durham City Board of Education, D.C.M.D.N.C. 1959, 176 F.Supp. 3. Notwithstanding the plain holdings of these cases, the plaintiffs still chose to prosecute this action as a class action and insist on the convening of a three-judge court. Their position becomes irreconcilable when one reads the Holt and McKissick cases, the decisions the plaintiffs wanted to comply with when they moved for a stay of proceedings, and then examines the original and supplemental complaints filed in this action and the applications filed on behalf of the minor plaintiffs in 1960. Plaintiffs' argument that they are entitled to an order desegregating all the public schools of Caswell County since the defendant Board has taken no steps to put an end to enforced segregation, rather than being required to pursue their rights as individuals, is completely and effectively answered in Covington v. Edwards, 4 Cir., 1959, 264 F.2d 780, 783, certiorari denied 1959, 361 U.S. 840, 80 S.Ct. 78, 4 L.Ed.2d 79, as follows:

"We are advertent to the circumstances upon which the plaintiffs rest their case, namely, that the County Board has taken no steps to put an end to the planned segregation of the pupils in the public schools of the county but, on the contrary, in 1955 and subsequent years, resolved that the practices of enrollment and assignment of pupils for the ensuing year should be similar to those in use in the current year. If there were no remedy for such inaction the federal court might well make use of its injunctive power to enjoin the violation of the constitutional rights of the plaintiffs but, as we have seen, the State statutes give to the parents of any child dissatisfied with the school to which he is assigned the right to make application for a transfer and the right to be heard on the question by the Board. If after the hearing and final decision he is not satisfied, and can show that he has been discriminated against because of his race, he may then apply to the federal court for relief. In the pending case, however, that course was not taken, although it was clearly outlined in our two prior decisions, and the decision of the District Court in dismissing the case was therefore correct."

It is manifest that the plaintiffs have chosen to ignore the many decisions upholding the constitutionality of the North Carolina pupil assignment law, hoping that they will be successful, in either this or the appellate courts, in getting the law stricken from the statute books. Just as the defendant Board is bound by the decision of the Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, so are the plaintiffs bound by the court decisions prescribing procedures to be followed in cases of this type before applying to the courts for injunctive relief. A court of equity requires good faith on the part of all litigants, and plaintiffs in cases of this type are no exception.

The constitutional rights of citizens should be adjudicated as quickly as possible. Delay can often result in a denial of rights. This case is a typical example of the great delay that can result from the failure of plaintiffs to perform the simple duties imposed upon them by

state law before applying to the courts for relief, and by failing to seek an adjudication of their rights as individuals. The difficult position of the court is that if the plaintiffs are permitted to completely ignore the decisions they dislike, statutes and procedures which have received judicial approval will be slowly whittled away and rendered completely meaningless.

What has been said is not to be construed as condoning dilatory tactics or evasions on the part of school boards which result in a perpetuation of enforced segregation in public schools. The record in this case strongly indicates that some of the minor plaintiffs, particularly the Saunders children, were denied reassignment solely on the basis of their race. The court would not hesitate to declare their right to attend the school of their choice without regard to their race if they had first made a good faith effort to gain admission to a particular school, and had sought a declaration of their constitutional rights rather than the constitutional rights of the class of persons they represent. New Dotmond Elementary School, the all Negro school to which the Saunders children were assigned, is almost twice as far from their home as the Murphy Elementary School. School buses serving both schools go by their front door. The principal reasons given for denying their request for transfer were that other children living in the home had not sought a transfer to another school, that New Dotmond Elementary School was much larger than Murphy Elementary School, and that transfer was sought solely because of race. It should be borne in mind, however, that the Saunders children did not seek admission to the Murphy Elementary School. While the record indicates that Murphy Elementary School is the school nearest their home, the court is hesitant to declare their right to attend Murphy Elementary School when they did not see fit to designate this school as the one which they desired to attend and as the one nearest their home. Had they applied for a transfer to the Murphy Elementary School, and had sought a protection of their rights as individuals, it is reasonably clear that their applications should have been granted. The fact that all the public schools of Caswell County are still completely segregated is an indication that transfers are being denied on the basis of race, and this is a factor properly to be considered when ultimately passing upon the applications of the minor plaintiffs.

The record is less clear with respect to the Brown children. The Caswell County Training School bus passes within four-tenths of a mile of their home. They would have to walk two and one-half miles to reach the Bartlett Yancey School bus. It is not feasible for both buses to travel over this two and one-half mile dirt road which deadends at the Brown home. There are no other children living on this road who attend, or who have applied for admission to, the Bartlett Yancey School. It is true that buses serving both schools go within a block and a half of each other in the town of Yanceyville, but for buses to carry children to both schools would create serious administrative problems. Since both schools are approximately the same distance from the Brown home, distance as a factor is eliminated. Additionally, the only reason given by the Brown children as to why a transfer was desired was to permit them to "transfer to an integrated school system, regardless of race, creed or color." Pupils have no inherent right to be transferred simply because of their race. They do have the right to have their applications considered without regard to race or color. As had been repeatedly stated, the Constitution of the United States, and nothing said in the Brown decision, requires an intermingling of the races, or gives to a child the right to attend a school of his choice solely because of his race. The simple requirement is that no child shall be denied admission to a school of his choice on the basis of race or color. In other words, the constitution does not require integration, it merely forbids discrimination. Briggs v. Elliott, D.C.

E.D.S.C.1955, 132 F.Supp. 776; Thompson v. County School Board of Arlington County, D.C.E.D.Va.1956, 144 F.Supp. 239. Upon reflection, it is perfectly clear that if school children were permitted to go to schools of their choice, without regard to attendance areas, distances, school bus routings, and other pertinent factors, some of the schools would be crowded beyond their capacity and some would be practically vacant. The burden is upon plaintiffs seeking a transfer to establish by a preponderance of the evidence that they were denied a constitutional right because of their race.

If the remaining minor plaintiffs, that is the Brown and Saunders children, actually desire a transfer to another school for the 1961–1962 school year, and will file applications for such transfer, setting out the schools they desire to attend, and demonstrate that they would be entitled to attend such schools if they were white children, the court will advance the case on the docket and see that their rights are fully adjudicated and determined in advance of the new school term. Amendment to the prayer for relief in the supplemental complaint filed on July 27, 1960, seeking an adjudication of the individual rights of the plaintiffs, will also be necessary.

Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter.

2. Samuel Maloy Mitchell is no longer eligible to attend the public schools of Caswell County, and an adjudication of his rights is unnecessary.

3. Charlie Jeffers, Alexander Jeffers, and Sylveen Jeffers have neither exhausted their administrative remedies nor sought an adjudication of their individual rights to attend a school of their choice without regard to race, and are, therefore, entitled to no relief.

4. Nathan Brown, Lunsford Brown, Sheliah Brown, Charlie Saunders, Jr. and Fred Saunders, while having technically exhausted their administrative remedies by filing applications for transfer to other schools and attending school board hearings, have not sought an adjudication of their individual rights, and have failed to sustain their burden of showing by a preponderance of the evidence that they had been denied admission to any particular school because of race or color.

In view of the fact that the Brown and Saunders children have technically exhausted their administrative remedies by filing applications for transfer and attending school board hearings, and the fact that the Saunders children have established that there is an elementary school much nearer their home than the school to which assigned, the court will defer the entry of a judgment for a period of ten days to give these plaintiffs an opportunity to file a written motion requesting that the case remain on the docket for the purpose of giving them an opportunity to request an adjudication of their individual rights to attend the school of their choice without regard to race or color, and the right to file new applications setting forth the schools to which transfers are desired and the reasons as to why the transfers should be granted. In the event such motion is filed, same shall be accompanied by an amendment to the supplemental complaint filed on July 27, 1960, seeking an adjudication of the individual rights of the plaintiffs. At the time the motion is filed, said plaintiffs shall further file with the defendant Board applications for reassignment to particular schools, setting forth the reason why the transfers are desired and should be granted. The defendant Board shall give individual consideration to the applications within 10 days after same are filed, and make a report to the court immediately thereafter with respect to the action taken on each of the applications. If any applications are denied, the reasons therefor shall be included in the report. A copy of the report shall be furnished each of the minor plaintiffs and their counsel at time it is filed with the court. If a court hearing is desired with respect to any applications denied, and a request for a

hearing is filed with the court within five days after receipt of notice of the action taken by the defendant Board, a prompt hearing will be afforded. If additional information is desired of any of the plaintiffs, same shall be furnished within two days after receipt of a written request therefor.